UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| BUD L. BUXTON, | ) | |
| Debtor. | ) | CASE NO. 05-63823 |
| PAMELA S. NEEDS fka<br>PAMELA S. OHMAN fka<br>PAMELA S. BUXTON, | ) | ADV. NO. 06-6013 |
| | ) | JUDGE RUSS KENDIG |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION**<br>**(WRITTEN OPINION)** |
| BUD L. BUXTON, | ) | |
| Defendant. | ) | |

This matter comes before the court upon a motion for summary judgment by Bud L. Buxton (hereinafter "Defendant") filed on May 31, 2006. Pamela Needs (hereinafter "Plaintiff") filed a response to the motion for summary judgment on June 9, 2006. Defendant filed a reply to Plaintiff's response memorandum on June 21, 2006. The court issued an order on September 20, 2006 requesting further briefing. Both parties complied with this request and filed further briefs. For the reasons set for below, Defendant's motion is **DENIED**.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157, and the general order of reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). Venue in this district and division is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

### FACTS & PARTIES' ARGUMENTS

Pursuant to a 1992 divorce decree issued in the Stark County Common Pleas Court, Defendant was to pay Plaintiff, his ex-wife, $93,435 (plus interest at ten percent if payments

1

were not timely tendered); half of a $54,450 loan; indemnify and hold Plaintiff harmless on any amounts borrowed on lines of credit from Society Bank and Bank One. Pl's Complaint, Ex. A. After Defendant failed to comply with the decree, he was held in contempt. Pl's Complaint, Ex. B. His debts were consolidated in one judgment against him for $85,650, plus interest at ten percent per year. Pl's Complaint, Ex. B. Subsequently, Defendant filed a chapter 7 petition on July 1, 1999. Plaintiff initiated an adversary proceeding against Defendant, stating his debt to Plaintiff was nondischargeable. In 2000 and pursuant to Section 523(a)(15), the bankruptcy court (J. Williams) found that $80,650, plus interest at ten percent from October 28, 1999, along with an additional $9,953.56, was nondischargeable and granted judgment for Plaintiff. Pl's Complaint, Ex. C.

Defendant filed two chapter 13 petitions before filing the chapter 7 petition at issue on July 5, 2005.[1] CSEA ("Child Support Enforcement Agency") is listed as an unsecured creditor in the amount of $5,000 in the 2005 case for a debt described as a "property settlement." While Plaintiff is included in the creditor matrix in the 2005 case, she is not listed on the schedules. Defendant did list his debt to ex-wife Kathy Forbus on Schedule F, which he describes as a "divorce property settlement." Defendant failed to list his pending domestic relations case with Plaintiff in the "suits and administrative proceedings" section of the petition. Plaintiff is the only person or entity listed on the creditor matrix that was not listed in the body of Defendant's schedules.

The docket shows that Plaintiff was served with Form ohnb227i, which includes notice of a chapter 7 case, meeting of creditors date, and deadlines to file a complaint objecting to dischargeability or object to exemptions. Though the meeting of creditors was originally scheduled for August 16, 2005, the actual meeting did not occur until October 17, 2005 because of the resignation of two chapter 7 trustees. Plaintiff did not attend the meeting of creditors in October, but did appear on August 16, 2005 to attend the meeting of creditors. Plaintiff received notice of the continued meeting.[2] The order of discharge was issued by the court on November 2, 2005. Subsequently, Defendant amended his schedules and increased the amount listed as due to CSEA to $110,000. He also added the domestic relations suit between himself and Plaintiff under the "suits and administrative proceedings" section. Plaintiff was not served with these amendments. CSEA was served with the amendments.

Plaintiff filed her complaint in this case on January 16, 2006. She alleges that Defendant has not paid any of the 2000 judgment debt, failed to list her as a creditor on his bankruptcy petition, and argues the debt owed to her is nondischargeable pursuant to section 523(a)(15). In Defendant's answer, he states the debt is not wholly unpaid. Further, Defendant asserts that

---

[1] Case No. 02-61228 was filed on March 20, 2002 and was voluntarily dismissed by Defendant on May 1, 2002. Case No. 02-65442 was filed on November 7, 2002 and was voluntarily dismissed by Defendant on April 3, 2003. Plaintiff was listed as a creditor on this petition for the amount of $104,263.72. CSEA was also listed on Schedule F, with the notation to notify for Pamela Ohman.

[2] Plaintiff was served with Form ohnb227i and notice of continued meeting of creditors at an address that coincides with the address she lists in her January complaint.

2

CSEA, to whom the debt to Plaintiff was payable, was listed on the schedules and Plaintiff was listed in the creditor matrix as a party entitled to notice.

Defendant's motion for summary judgment states Plaintiff's complaint is time-barred because of her failure to commence an action before the October 17, 2005, deadline to file a complaint to determine the dischargeability of a debt. Further, Defendant asserts that, to determine the dischargeability of a debt under section 523(a)(15), the court must look to the facts and circumstances at the time of trial. Defendant also argues that section 523(b) is intended to allow debts that were nondischargeable in a prior bankruptcy to be dischargeable in a subsequent bankruptcy, provided circumstances have changed. He further asserts that the 2000 judgment is not subject to res judicata because the court must determine a debtor's ability to pay at the time of a trial. Finally, Defendant states that Plaintiff does not satisfy the required elements of equitable tolling because she received actual notice of the meeting of creditors.

Plaintiff posits that the court can accept complaints after the filing date because, in the Sixth Circuit, Rule 4007 is not a jurisdictional bar and is subject to defenses of waiver, estoppel, and equitable tolling. Plaintiff further asserts that section 523(a)(3)(B) applies in this instance because she did not receive notice that Defendant was attempting to discharge her debt. She cites as evidence of lack of actual knowledge the following: Plaintiff was not listed on Defendant's schedules; the amount owed to Plaintiff did not appear on the petition; the CSEA amount listed on the petition was only a fraction of what was owed to her; and CSEA is not the authorized agent to receive legal notice on behalf of Plaintiff. Plaintiff argues for the application of res judicata because once a debt is excepted from discharge, it is continually nondischargeable in a later bankruptcy proceeding.

## DISCUSSION

### 1. **Summary Judgment Standard**

The standard for summary judgment is set forth in Federal Rule of Civil Procedure 56, made applicable through Federal Rule of Bankruptcy Procedure 7056, which provides that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The evidence "must be viewed in the light most favorable" to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a genuine dispute of material fact exists, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3

The court must first consider the basis for the moving party's motion for summary judgment, as the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any', which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Subsequently, the nonmoving party must demonstrate that a genuine issue of material fact exists. Anderson, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but…must set forth specific facts showing there is a genuine issue for trial." Id.

## 2. Section 523(b)

Section 523(b) states, in pertinent part:

> Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act…in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

11 U.S.C. § 523(b). The Bankruptcy Appellate Panel in the Ninth Circuit reads the statute to suggest a judgment as to the nondischargeablity of a debt remains enforceable as to the same debtors in a subsequent bankruptcy proceeding, without need for creditor to file a new dischargeability action. Moncur v. AgriCredit Acceptance Co. (In re Moncur), 328 B.R. 183 (B.A.P. 9th Cir. 2005); Paine v. Griffin (In re Paine), 283 B.R. 33 (B.A.P. 9th Cir. 2002). However, courts are extremely cautious when adopting such a rule because it requires the use of a negative inference from the provisions in section 523(b). Royal Am. Oil & Gas Co. v. Szafranski (In re Szafranski), 147 B.R. 976 (Bankr. N.D. Okla. 1992). In this case, the application of the negative implication is particularly difficult, given the provisions contained within section 523(a)(15). In order to fully examine the "fresh start" benefits that may be obtained by a debtor under section 523(a)(15), the court must look to the parties' circumstances at the time of trial, rather than the date of the divorce or the date the bankruptcy petition was filed. Dressler v. Dressler (In re Dressler), 194 B.R. 290 (Bankr. D. R.I. 1996). If the court were to read section 523(b) to signify that the debt is nondischargeable in the current proceeding because of its nondischargeable characterization in the previous proceeding, the requirement under section 523(a)(15) to consider circumstances at the time of trial would be negated. Thus, due to the structure of section 523(a)(15) and because the balancing test under section 523(a)(15) is based upon a debtor's *current* income and assets, the negative implication should not be utilized in this case.

4

3. **Section 523(a)(3)(B)**

Section 523(a)(3)(B) excepts a debt

> neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit –
>
> \*\*\*\*\*\*
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subjection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3)(B). Even though the section at issue in this case, (a)(15), is not included in the text of section 523(a)(3)(B), it is generally accepted that such omission was a "technical error" and should be included, so that section 523(c)(1) is paralleled. Herman v. Bateman (In re Bateman), 254 B.R. 866, 870 at n.5 (Bankr. D. Md. 2000); Steele v. Assey (In re Steele), 2001 WL 1804310 (Bankr. D.S.C. 2001) (unpublished). The court accepts this principle. Creditor correctly states that there is no time limitation for filing a complaint under § 523(a)(3)(B). Fed. R. Bankr. P. 4007(b). If Creditor can utilize the protection of section 523(a)(3)(B), the sixty day deadline does not apply and the motion for summary judgment should be denied.

Though Creditor and Debtor disagree as to whether Creditor was "scheduled or listed" in this case, the court will assume, *arguendo*, that Creditor was not scheduled or listed. The key question for the court to consider pursuant to section 523(a)(3)(B) is whether Creditor had "actual knowledge" of the bankruptcy filing, as "courts have consistently held that where a creditor has actual knowledge of the bankruptcy filing pursuant to Section 523(a)(3), that creditor has not been denied due process rights." In re Bateman, 254 B.R. at 870; see also Neely v. Murchinson, 815 F.2d 345, 347 (5th Cir. 1987).

Though "actual knowledge" is not defined in the Bankruptcy Code, several legal definitions are available for the phrase. Black's Law Dictionary defines the phrase as "direct and clear knowledge, as distinguished from constructive knowledge" (8th ed. 2004). Norton's Bankruptcy Law and Practice defines actual knowledge as "knowledge of facts sufficient to apprise the creditor that a case was actually filed, and where the proceeding is pending." 3 William L. Norton, Norton Bankr. L. & Prac. ¶ 47:20 (2d ed. 2006).

5

While Plaintiff was not listed on Schedule F, she was listed on the matrix of creditors and has admitted that she received notice of the filing of the bankruptcy petition. Pl's Responses to Req. for Admissions 3. This notice, issued by the clerk's office, states the bankruptcy was filed on July 5, 2005 and advises that a complaint to determine dischargeability of a debt had to be filed by October 17, 2005. Though Plaintiff argues she was not put on actual notice that Defendant was attempting to discharge the debt owed to her, this is not the standard under section 523(a)(3)(B). The question is whether a creditor had actual knowledge of *the case*. Thus, Plaintiff's contention that she had no knowledge Defendant was attempting to discharge her debt until after he filed amended schedules is irrelevant. Therefore, there is no genuine issue of material fact in this regard and Plaintiff cannot utilize section 523(a)(3)(B) to defeat Defendant's motion for summary judgment.

### 4. Section 523(c) and Rule 4007

A Chapter 7 discharge allows a debtor to be discharged from pre-petition debts, excepting debts listed in section 523(a). 11 U.S.C. § 727(b). Pursuant to section 523(c), a debtor

> shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1). Rule 4007 complements section 523(c) and states, in pertinent part, "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). Thus, of the categories of excepted debt listed in section 523(a), only those that occur pursuant to subsections (2), (4), (6), and (15) require that the creditor file a dischargeability complaint within sixty days from the date that the meeting of creditors was first set. 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c). In this case, the 341 meeting was initially set for August 16, 2005. Accordingly, the time to file a dischargeability complaint expired on October 17, 2005. Plaintiff filed her complaint on January 16, 2006.

The Sixth Circuit has held that Rule 4007 is a "deadline," rather than a jurisdictional requirement. Nardei v. Maughan (In re Maughan), 340 F.3d 337 (6th Cir. 2003). Thus, Plaintiff is correct in asserting that Rule 4007 is subject to the defenses of waiver, equitable tolling, and estoppel. Id. Plaintiff asks the court to apply the doctrine of equitable tolling and accept the tardy complaint.

6

*a. Equitable Tolling*

Five factors determine if the doctrine of equitable tolling should be applied. In re Maughan, 340 F.3d at 344. The court must look at the following factors: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Id. (quoting Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)).

Though the term "actual notice" is not defined in the bankruptcy code, it is otherwise defined as "notice given directly to, or received personally by, a party." Black's Law Dictionary (8th ed. 2004). Unlike in section 523(a)(3)(B), the question is whether Plaintiff had actual notice of the *filing requirement*. Plaintiff received notice from the court containing the last date to file a dischargeability action. Because there seems to be no "subjective" element included in the actual notice definition, the first factor of the test weighs in Defendant's favor.

However, simply finding a party had actual or constructive notice does not end the examination. If a party has actual or constructive notice of the filing requirement, the court's inquiry shifts to focus "on the diligence used by the plaintiff in pursuing its rights and the resulting prejudice, if any, to the defendant." In re Maughan, 340 F.3d at 344 (quoting First Bank System v. Begus (In re Begue), 176 B.R. 801, 804 (Bankr. N.D. Ohio 1995)). The pertinent question is whether the "circumstances were such as either to 'disable' the plaintiff from bringing a timely action…or to conceal the need for filing a dischargeability complaint." Id. This inquiry should be done on a case-by-case basis. Peyton v. Mohtasham (In re Ghanei), 2004 Bankr. LEXIS 2369 (Bankr. E.D. Va. 2004) (unpublished).

The court finds that consideration of relevant facts in this case tip the balance of this inquiry heavily towards Plaintiff. While Plaintiff was listed on the creditor matrix, she was not listed on any of Defendant's schedules. Though the docket information on Defendant's first two cases is not available via CM/ECF, it is telling that when he filed his chapter 13 petition in 2002, Defendant listed Plaintiff in his creditor matrix *and* on Schedule F (in the amount of $104,263.72). CSEA was listed separately on Schedule F in the 2002 petition. Defendant offers no rationale as to why Plaintiff was not listed in his schedules of the 2005 petition. Thus, Plaintiff was reasonable in assuming that Defendant would list her separately on Schedule F of the 2005 petition if attempting to discharge the debt owed to her.

Further, the amount listed on the petition as owed to CSEA was approximately $100,000 less than the actual amount owed to Plaintiff, which prevented her from discovering that Defendant was attempting to discharge the debt owed to her. Only when Defendant amended his schedules after the date to object to discharge did the monetary figure close to the amount owed to Plaintiff appear in the schedules. It is suspicious that Plaintiff is the *only* creditor listed on the creditor matrix not listed in the body of Defendant's schedules. Also telling is the fact that Defendant listed a property settlement owed to ex-wife Kathy Forbus on Schedule F under her

7

name, not that of CSEA. In addition, Defendant failed to list the pending lawsuit between he and Plaintiff under the "suits and administrative proceedings" portion of the schedules. Considering the above facts, it was reasonable for Plaintiff to take the course of action she did. The circumstances were such that the need for the filing of a dischargeability complaint was disguised and Plaintiff was reasonable in remaining ignorant of the filing requirement. Further, Plaintiff pursued a course of action once the fact that Defendant was attempting to discharge the debt owed to her became clear. In addition, Defendant is not prejudiced as the court can complete the 523(a)(15) test based upon his *current* income and expenses. Applying the test for equitable tolling, the factors weigh in favor of Plaintiff.

## CONCLUSION

Accordingly, equitable tolling of the filing deadline is appropriate. The complaint pending before the court is considered timely filed and will remain before the court for determination pursuant to applicable law. Defendant's motion for summary judgment is **DENIED**.

A separate order is issued herewith.

/s/ Russ Kendig          NOV - 8 2006

**Judge Russ Kendig**
**U.S. Bankruptcy Judge**

8

## Service List

Robert H. Cyperski
1201 30th Street NW
#4B
Canton, OH  44709

Anthony DeGirolamo
116 Cleveland Ave. NW
Suite 625
Canton, OH  44702

Bud L. Buxton
1186 Keats Street NE
North Canton, OH  44721

Joanne Paulio
J. Curtis Werren
Day Ketterer, Ltd.
Millennium Centre, Suite 300
200 Market Ave. North
P.O. Box 24213
Canton, OH 44701

Pamela Needs
1628 36th Street NW
Canton, OH  44709

Michael J. Moran
Gibson & Lowry
P.O. Box 535
234 Portage Trail
Cuyahoga Falls, OH  44222

9

06-06013-rk    Doc 22    FILED 11/08/06    ENTERED 11/08/06 15:44:47    Page 9 of 9